UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

THOMAS DALLIO,

                                    Plaintiff,

                                                        9:06-CV-0118
v.                                                      (GTS/GHL)

JERRY HEBERT, et al.,

                                    Defendants.
_____

APPEARANCES:                                OF COUNSEL:

THOMAS DALLIO, 88-T-2364
Plaintiff *pro se*
Upstate Correctional Facility
P.O. Box 2001
Malone, NY 12953

HON. ANDREW M. CUOMO                        RICHARD LOMBARDO, ESQ.
Attorney General for the State of New York
  Counsel for Defendants
The Capitol
New York, NY 12224

GEORGE H. LOWE, United States Magistrate Judge

## **REPORT-RECOMMENDATION**

        This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has

been referred to me for Report and Recommendation by the Honorable Glenn T. Suddaby,

United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).  Plaintiff

Thomas Dallio alleges that he was subjected to excessive force and inadequate medical care and

that prison officials covered up staff misconduct by issuing false responses to his grievances.

Currently pending before the Court is Defendants' motion for partial summary judgment

pursuant to Federal Rule of Civil Procedure 56.  (Dkt. No. 71.)  For the reasons that follow, I

recommend that Defendants' motion be granted in part and denied in part.

## I.      BACKGROUND

### A.      Summary of Plaintiff's Complaint

The complaint (Dkt. No. 1) alleges that:

In the winter of 2003, Plaintiff was a "PIMS Level 3" inmate at Upstate Correctional

Facility, a status that entitled him access to privileges including evening yard recreation.  (Dkt.

No. 1 at ¶ 18.)  However, for the weeks prior to February 4, 2003, Upstate employees failed to

grant Plaintiff his evening yard recreation privileges "as part of their pre-planned conspiracy to

weaken Plaintiff and set up Plaintiff to be subjected to a surprise attack."  *Id.*

On February 4, 2003, Defendants C.O. Jerry Hebert and C.O. Scott Santamore arrived at

Plaintiff's cell to conduct a cell search.  (Dkt. No. 1 at ¶ 17.)  Defendants ordered Plaintiff to put

his back to the cell door and handcuffed him.  (Dkt. No. 1 at ¶ 20.)  Defendant Hebert called the

console officer on his walkie-talkie and directed the console officer to open Plaintiff's cell.  *Id.*

As the cell door opened, Plaintiff kept his back to the door and awaited the officers' instructions.

(Dkt. No. 1 at ¶ 21.)  Despite this, Defendant Hebert "in an attempt to create a false impression

for the malicious and sadistic actions that he and his partner Santamore had pre-planned to do,

feigned alarm and stated 'Keep your back to the cell door!'" *Id.*  Plaintiff replied that his back

*was* to the cell door.  (Dkt. No. 1 at ¶ 22.)  Defendants Hebert and Santamore then ran into

Plaintiff's cell and attacked him from behind, punching and kicking Plaintiff until he was face

down on the floor.  (Dkt. No. 1 at ¶ 23.)

A response team of officers, including Defendants C.O. Sheila Sauve, Sgt. Daniel King,

C.O. Royce Corbine, and C.O. Judy Warriner,  then rushed in and held Plaintiff down.  (Dkt. No. 1 at ¶¶ 23-24.)  Defendant Hebert placed his boot on Plaintiff's neck and Defendants C.O. Hank Herrmann, C.O. Charles Smith, and C.O. Andrew Streeter began punching and kicking Plaintiff. *Id*.

Plaintiff was escorted out of the cell with his hands handcuffed and shackled.  (Dkt. No. 1 at ¶ 25.)  In the hallway, the officers brought Plaintiff down to the floor and shackled his legs.  *Id.* Defendants Corbine, Smith, Streeter, and "other officers" then "misused force and further harmed Plaintiff by injuring his face and body, more than merely a good faith effort to restore discipline.  Their intent was to maliciously add injury to insult."  (Dkt. No. 1 at ¶ 26.)

Plaintiff was lifted to his feet and escorted to a holding pen, where he was guarded by Defendants Lt. Donald Quinn and Sgt. Michele Wilson.  (Dkt. No. 1 at ¶ 27.)  After his cell had been searched, Defendant Sauve and a camcorder operator escorted Plaintiff back to his cell.  *Id*.

"Inside the cell, [Defendant] Sauve with the camcorder filmed the events in such a way as to prevent anyone from seeing what was actually happening to Plaintiff, as the multitude of employees in the cell blocked the view of officers punching and kicking Plaintiff several times while Plaintiff was already on the floor and not resisting."  (Dkt. No. 1 at ¶ 28.)  After the officers beat Plaintiff, they tied up his hands and feet with his bed sheets and kicked him under the bed.  (Dkt. No. 1 at ¶ 29.)  Defendant Quinn "witnessed the abuse and condoned it."  *Id*.

Plaintiff alleges that the officers who searched his cell stole his pen "to prevent Plaintiff from notifying anyone in the outside world" about the attack.  (Dkt. No. 1 at ¶ 32.)

After the officers left Plaintiff's cell, Defendants Wilson and Nurse Susan Ryan arrived to do a medical exam.  (Dkt. No. 1 at ¶ 30.)  "Yet because of the trauma of the nightmarish

experience, Plaintiff was in pain and not fast enough for the impatient employees who each took

a mere surface look at Plaintiff without documenting all of his injuries." *Id*.  Plaintiff also

alleges that he was "not completely photographed that evening because the officer with the

camera [believed] that Plaintiff was unwilling to cooperate."  (Dkt. No. 31.)

Another prisoner contacted Prisoners Legal Service, which sent a paralegal to see

Plaintiff on February 7, 2003.  (Dkt. No. 1 at ¶ 33.)  The paralegal photographed Plaintiff and

arranged for a medical exam "because Plaintiff's sick call requests met with deliberate

indifference by Nurses Ryan, Riley, and Perrea."  *Id.*

After the incident, Defendant Hebert wrote a false misbehavior report stating that Plaintiff

"turned around and had hold of his right finger and attempted to pull him into Plaintiff's cell."

(Dkt. No. 1 at ¶ 36.)  In a later memo, Defendant Hebert "changed his story" and stated that

"Dallio attempted to grab my hand and tried to pull me in his cell."  *Id*.  Plaintiff alleges that a

videotape of the incident (L03-094) shows that Defendants Hebert and Santamore "were several

feet away from Plaintiff's cell and ran in on their own initiative.  They were not pulled in, nor

attempted to be pulled in." *Id*.

Plaintiff did not attend his disciplinary hearing because he was afraid that he would be

attacked.  (Dkt. No. 1 at ¶ 38.)

Plaintiff filed complaints with the superintendent of the facility.  The investigation was

assigned to Defendants Lt. Roger Wright, Capt. Steven Racette, and Deputy Superintendent John

Donelli, who "participated in a coverup in their response to the dishonest investigation."  (Dkt.

No. 1 at ¶ 34.)

Defendant Inspector General Investigator Benjamin Iozetti "wrote a false investigation

4

report in which he falsely stated Plaintiff banged his head in the cell and on the cell door while

out of the cell.  He also states he reviewed the tapes, yet make no mention of how C.O. Hebert

and C.O. Santamore ran into Plaintiff's cell without being pulled in and with no attempt to pull

any officer in."  (Dkt. No. 1 at ¶ 37.)

Plaintiff filed a Freedom of Information Act request for the video tapes of the February 4,

2003, incident.  (Dkt. No. 1 at ¶ 35.)  He received a tape of the empty recreation yard.  *Id.*

Plaintiff asked an unnamed person to mail videotape L03-094 to Defendant Darcy

Curnell, an investigator at the District Attorney's office.  (Dkt. No. 1 at ¶ 39.)  Non-defendant

officers "conspired by arranging for the wrong tape to be sent." *Id.*  "By the time Plaintiff ...

eventually got the right tape to the D.A. investigator, the D.A. investigator chose to conspire and

cover up by failing to prosecute C.O. Hebert and co-workers."  (Dkt. No. 1 at ¶ 40.)

Plaintiff alleges that Defendant Hebert "has similarly attacked several prisoners from

behind at Upstate ... and despite notification to Upstate authorities there's been continual cover

up of the evidence."  (Dkt. No. 1 at ¶ 41.)

Plaintiff asked several officers, including Defendants Donelli and Racette, to install a

camcorder monitor outside Plaintiff's cell whenever Plaintiff arrived or left in order to prevent

future incidents.  His requests were denied.  (Dkt. No. 1 at ¶ 38.)

**B.      Summary of Grounds in Support of Defendants' Motion**

Defendants argue that (1) the complaint should be dismissed against all Defendants in

their official capacities; (2) Plaintiff's pendent state law claims are barred by New York State

Corrections Law section 24; (3) Defendants Ryan, Riley, and Perrea provided constitutionally

sufficient medical care; (4) Defendants Wright, Racette, Donelli, and Iozetti were not personally

involved in the alleged constitutional deprivations; (5) the claims against Defendants Ryan,

Riley, Perrea, Wright, Racette, Donelli, and Iozetti are barred by the doctrine of qualified

immunity.  (Dkt. No. 71-17.)

C.      **Summary of Plaintiff's Response to Defendants' Arguments**

In response, Plaintiff (1) concedes that the complaint should be dismissed against all

Defendants in their official capacities; (2) concedes that the pendent state law claims must be

dismissed; (3) argues that there are genuine issues of material fact that preclude summary

judgment for Defendants on the issue of deliberate indifference by Defendants Riley, Ryan, and

Perrea; (4) argues that Defendants Wright, Racette, Donelli, and Iozetti were personally involved;

and (5) argues that Defendants Ryan, Riley, Perrea, Wright, Racette, Donelli, and Iozetti are not

entitled to qualified immunity.  (Dkt. No. 72.)

## II.     APPLICABLE LEGAL STANDARDS

A.      **Legal Standard Governing Motions for Summary Judgment**

Under Federal Rule of Civil Procedure 56, summary judgment is warranted if "the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In determining whether

a genuine issue of material[1] fact exists, the Court must resolve all ambiguities and draw all

reasonable inferences against the moving party.[2]

---

[1]      A fact is "material" only if it would have some effect on the outcome of the suit.
*Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

[2]      *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) [citation omitted];
*Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) [citation omitted].

If the moving party meets its initial burden of establishing the absence of any genuine issue of material fact, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial."[3]  The nonmoving party must do more than "rest upon the mere allegations . . . of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts."[4]  Rather, "[a] dispute regarding a material fact is *genuine* if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[5]

**B.      Legal Standard Governing Motions to Dismiss for Failure to State a Claim**

To the extent that a defendant's motion for summary judgment under Federal Rule of Civil Procedure 56 is based entirely on the plaintiff's complaint, such a motion is functionally the same as a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  As a result, "[w]here appropriate, a trial judge may dismiss for failure to state a cause of action upon motion for summary judgment." *Schwartz v. Compagnise General Transatlantique*, 405 F.2d 270, 273-74 (2d Cir. 1968) [citations omitted]; *accord, Katz v. Molic*, 128 F.R.D. 35, 37-38 (S.D.N.Y. 1989) ("This Court finds that . . . a conversion [of a Rule 56

---

[3]      Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is made [by a defendant] and supported as provided in this rule, the [plaintiff] may not rest upon the mere allegations . . . of the [plaintiff's] pleading, but the [plaintiff's] response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the [plaintiff] does not so respond, summary judgment, if appropriate, shall be entered against the [plaintiff].");  *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986).

[4]      *Matsushita*, 475 U.S. at 585-86; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *see also* Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is made [by a defendant] and supported as provided in this rule, the [plaintiff] may not rest upon the mere allegations . . . of the [plaintiff's] pleading . . . .").

[5]      *Ross v. McGinnis*, 00-CV-0275, 2004 WL 1125177, at *8 (W.D.N.Y. Mar. 29, 2004) [internal quotations omitted] [emphasis added].

summary judgment motion to a Rule 12(b)(6) motion to dismiss the complaint] is proper with or

without notice to the parties.").  Moreover, even where a defendant has not advanced such a

failure-to-state-a-claim argument on a motion for summary judgment, a district court may, *sua*

*sponte*, address whether a *pro se* prisoner has failed to state a claim upon which relief may be

granted.[6]  For these reasons, it is appropriate to briefly summarize the recently clarified legal

standard governing Federal Rule of Civil Procedure 12(b)(6) motions to dismiss.

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a

complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P.

12(b)(6).  It has long been understood that a defendant may base such a motion on either or both

of two grounds: (1) a challenge to the "sufficiency of the pleading" under Federal Rule of Civil

---

[6]      The authority to conduct this *sua sponte* analysis is derived from two sources: (1)
28 U.S.C. § 1915(e)(2)(B)(ii), which provides that "the court shall dismiss [a] case [brought by a
prisoner proceeding *in forma pauperis*] at any time if the court determines that . . . the action . . .
is frivolous or malicious[,] . . . fails to state a claim on which relief may be granted[,] . . . or . . .
seeks monetary relief against a defendant who is immune from such relief"; and (2) 28 U.S.C. §
1915A(b), which provides that, "[o]n review, the court shall . . . dismiss the [prisoner's]
complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to
state a claim upon which relief may be granted . . . ."

Procedure 8(a)(2);[7] or (2) a challenge to the legal cognizability of the claim.[8]

Rule 8(a)(2) requires that a pleading contain "a short and plain statement of the claim *showing* that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2) [emphasis added].  By requiring this "showing," Rule 8(a)(2) requires that the pleading contain a short and plain statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds

---

[7]      *See* 5C Wright & Miller, *Federal Practice and Procedure* § 1363 at 112 (3d ed. 2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).") [citations omitted]; *Princeton Indus., Inc. v. Rem*, 39 B.R. 140, 143 (Bankr. S.D.N.Y. 1984) ("The motion under F.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v. Masiello*, 55 F.R.D. 72, 74 (S.D.N.Y. 1972) ("This motion under Fed. R. Civ. P. 12(b)(6) tests the formal legal sufficiency of the complaint, determining whether the complaint has conformed to Fed. R. Civ. P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled to relief.'").

[8]      *See  Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) ("These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest.  . . .  In addition, they state claims upon which relief could be granted under Title VII and the ADEA."); *Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004) ("There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted."); *Phelps v. Kapnolas*, 308 F.3d 180, 187 (2d Cir. 2002) ("Of course, none of this is to say that a court should hesitate to dismiss a complaint when the plaintiff's allegation . . . fails as a matter of law.") [citation omitted]; *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000) (distinguishing between a failure to meet Rule 12[b][6]'s requirement of stating a cognizable claim and Rule 8[a]'s requirement of disclosing sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 379 F. Supp.2d 348, 370 (S.D.N.Y. 2005) ("Although Rule 8 does not require plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim [under Rule 12(b)(6)].") [citation omitted]; *Util. Metal Research & Generac Power Sys.*, 02-CV-6205, 2004 U.S. Dist. LEXIS 23314, at *4-5 (E.D.N.Y. Nov. 18, 2004) (distinguishing between the legal sufficiency of the cause of action under Rule 12[b][6] and the sufficiency of the complaint under Rule 8[a]); *accord, Straker v. Metro Trans. Auth.*, 331 F. Supp.2d 91, 101-102 (E.D.N.Y. 2004); *Tangorre v. Mako's, Inc.*, 01-CV-4430, 2002 U.S. Dist. LEXIS 1658, at *6-7 (S.D.N.Y. Jan. 30, 2002) (identifying two sorts of arguments made on a Rule 12[b][6] motion--one aimed at the sufficiency of the pleadings under Rule 8[a], and the other aimed at the legal sufficiency of the claims).

upon which it rests."[9]  The main purpose of this rule is to "facilitate a proper decision on the

merits."[10]  A complaint that fails to comply with this rule "presents far too heavy a burden in

terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis

for the Court to assess the sufficiency of [plaintiff's] claims."[11]

      The Supreme Court has long characterized this pleading requirement under Rule 8(a)(2)

as "simplified" and "liberal," and has repeatedly rejected judicially established pleading

requirements that exceed this liberal requirement.[12]  However, it is well established that even this

---

      [9]      *Dura Pharm., Inc. v. Broudo*, 125 S. Ct. 1627, 1634 (2005) (holding that the
complaint failed to meet this test) [citation omitted; emphasis added]; *see also Swierkiewicz*, 534
U.S. at 512 [citation omitted]; *Leathernman v. Tarrant County Narcotics Intelligence and
Coordination Unit*, 507 U.S. 163, 168 (1993) [citation omitted].

      [10]      *Swierkiewicz*, 534 U.S. at 514 (quoting *Conley*, 355 U.S. at 48); *see also Simmons
v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995) ("Fair notice is that which will enable the adverse party
to answer and prepare for trial, allow the application of res judicata, and identify the nature of
the case so it may be assigned the proper form of trial.") [citation omitted]; *Salahuddin v. Cuomo*,
861 F.2d 40, 42 (2d Cir. 1988) ("[T]he principle function of pleadings under the Federal Rules is
to give the adverse party fair notice of the claim asserted so as to enable him to answer and
prepare for trial.") [citations omitted].

      [11]      *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996) (McAvoy, J.), *aff'd*, 113
F.3d 1229 (2d Cir. 1997) (unpublished table opinion); *accord*, *Hudson v. Artuz*, 95-CV-4768,
1998 WL 832708, at *2 (S.D.N.Y. Nov. 30, 1998), *Flores v. Bessereau*, 98-CV-0293, 1998 WL
315087, at *1 (N.D.N.Y. June 8, 1998) (Pooler, J.).  Consistent with the Second Circuit's
application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this
unpublished table opinion, not as precedential authority, but merely to show the case's
subsequent history.  *See*, *e.g.*, *Photopaint Technol., LLC v. Smartlens Corp.*, 335 F.3d 152, 156
(2d Cir. 2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore
Sec. & Co.*, 104 F.3d 355 [2d Cir. 1996]).

      [12]      *See*, *e.g.*, *Swierkiewicz*, 534 U.S. at 513-514 (noting that "Rule 8(a)(2)'s
simplified pleading standard applies to all civil actions, with limited exceptions [including]
averments of fraud or mistake.").

liberal notice pleading standard "has its limits."[13]  As a result, several Supreme Court and Second Circuit decisions exist, holding that a pleading has failed to meet this liberal notice pleading standard.[14]

Most notably, in *Bell Atlantic Corporation v. Twombly*, the Supreme Court, in reversing an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1, "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  127 S. Ct. 1955, 1968-69[15] (2007).[16]  Rather than turning on the

---

[13]        2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003).

[14]        *See, e.g.*, *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-1974 (2007) (pleading did not meet Rule 8[a][2]'s liberal requirement); *accord*, *Dura Pharm.*, 125 S. Ct. at 1634-1635, *Christopher v. Harbury*, 536 U.S. 403, 416-422 (2002), *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234-235 (2d Cir. 2004), *Gmurzynska v. Hutton*, 355 F.3d 206, 208-209 (2d Cir. 2004).  Several unpublished decisions exist from the Second Circuit affirming the Rule 8(a)(2) dismissal of a complaint after *Swierkiewicz*.  *See, e.g.*, *Salvador v. Adirondack Park Agency of the State of N.Y.*, No. 01-7539, 2002 WL 741835, at *5 (2d Cir. Apr. 26, 2002) (affirming pre-*Swierkiewicz* decision from Northern District of New York interpreting Rule 8[a][2]).  Although these decisions are not themselves precedential authority, *see* Rules of the U.S. Court of Appeals for the Second Circuit, § 0.23, they appear to acknowledge the continued precedential effect, after *Swierkiewicz*, of certain cases from within the Second Circuit interpreting Rule 8(a)(2).  *See Khan v. Ashcroft*, 352 F.3d 521, 525 (2d Cir. 2003) (relying on summary affirmances because "they clearly acknowledge the continued precedential effect" of *Domond v. INS*, 244 F.3d 81 [2d Cir. 2001], after that case was "implicitly overruled by the Supreme Court" in *INS v. St. Cyr*, 533 U.S. 289 [2001]).

[15]        All references to *Bell Atlantic* will cite the Supreme Court Reporter rather than the United States Reports.  The United States Reports version of the case does not include page numbers at this time.

[16]        The Court in *Bell Atlantic* further explained: "The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been adequately stated, it may be supported by showing any set of facts consistent with the allegations in the

*conceivability* of an actionable claim, the Court clarified, the Rule 8 "fair notice" standard turns on the *plausibility* of an actionable claim. *Id*. at 1965-74.

More specifically, the Court reasoned that, by requiring that a pleading "show[] that the pleader is entitled to relief," Rule 8(a)(2) requires that the pleading give the defendant "fair notice" of (1) the nature of the claim and (2) the "grounds" on which the claim rests. *Id*. at 1965, n.3 [citation omitted]. While this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id*. [citations omitted]. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id*. at 1965 [citations omitted]. What this means, on a practical level, is that there must be "plausible grounds to infer [actionable conduct]," or, in other words, "enough fact to raise a reasonable expectation that discovery will reveal evidence of [actionable conduct]." *Id*.

As have other Circuits, the Second Circuit has repeatedly recognized that the clarified plausibility standard that was articulated by the Supreme Court in *Bell Atlantic* governs *all* claims, not merely antitrust claims brought under 15 U.S.C. § 1 (as were the claims in *Bell Atlantic*).[17] The Second Circuit has also recognized that this *plausibility* standard governs claims

---

complaint. . . . *Conley*, then, described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival." *Bell Atlantic*, 127 S. Ct. at 1969.

[17]        *See, e.g., Ruotolo v. City of New York,* 514 F.3d 184, 188 (2d Cir. 2008) (in civil rights action, stating that "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'") [citation omitted]; *Goldstein v. Pataki*, 07-CV-2537, 2008 U.S. App. LEXIS 2241, at *14 (2d Cir. Feb. 1, 2008) (in civil rights action, stating that "*Twombly* requires . . . that the complaint's '[f]actual allegations be enough to raise a

brought even by *pro se* litigants (although the plausibility of those claims is be assessed

generously, in light of the special solicitude normally afforded *pro se* litigants).[18]

It should be emphasized that Rule 8's plausibly standard, explained in *Bell Atlantic*, was

in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson*

*v. Pardus*, in which the Court stated, "Specific facts are not necessary" to successfully state a

claim under Rule 8(a)(2). *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) [citation omitted].

That statement was merely an abbreviation of the often-repeated point of law–first offered in

*Conley* and repeated in *Bell Atlantic*–that a pleading need not "set out in detail the facts upon

which [the claim is based]" in order to successfully state a claim. *Bell Atlantic*, 127 S. Ct. 1965,

n.3 (citing *Conley v. Gibson*, 355 U.S. 41, 47 [1957]).  That statement in no way meant that all

pleadings may achieve the requirement of giving a defendant "fair notice" of the nature of the

claim and the "grounds" on which the claim rests without ever having to allege any facts

---

right to relief above the speculative level . . . .'") [internal citation omitted]; *ATSI Commc'ns, Inc.
v. Shaar Fund, Ltd.*, 493 F.3d 87, 98, n.2 (2d Cir. 2007) ("We have declined to read Twombly's
flexible 'plausibility standard' as relating only to antitrust cases.") [citation omitted]; *Iqbal v.
Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (in prisoner civil rights action, stating, "[W]e believe
the [Supreme] Court [in *Bell Atlantic Corp. v. Twombly*] is . . . requiring a flexible 'plausibility
standard,' which obliges a pleader to amplify a claim with some factual allegations in those
contexts where such amplification is needed to render the claim *plausible*.") [emphasis in
original].

[18]      *See*, *e.g.*, *Jacobs v. Mostow*, 281 F. App'x 85, 87 (2d Cir. March 27, 2008) (in pro
se action, stating, "To survive a motion to dismiss, a complaint must plead 'enough facts to state
a claim to relief that is plausible on its face.'") [citation omitted] (summary order, cited in
accordance with Local Rule 32.1[c][1]); *Boykin v. KeyCorp.*, 521 F.3d 202, 215-16 (2d Cir.
2008) (finding that borrower's *pro se* complaint sufficiently presented a "*plausible* claim of
disparate treatment," under Fair Housing Act, to give lenders fair notice of her discrimination
claim based on lenders' denial of her home equity loan application) [emphasis added].

13

whatsoever.[19]  There must still be enough facts alleged to raise a right to relief above the

speculative level to a plausible level, so that the defendant may know what the claims are and the

grounds on which they rest (in order to shape a defense).

        Having said all of that, it should also be emphasized that, "[i]n reviewing a complaint for

dismissal under Fed. R. Civ. P. 12(b)(6), the court must accept the material facts alleged in the

---

[19]      For example, in *Erickson*, a district court had dismissed a *pro se* prisoner's civil rights complaint because, although the complaint was otherwise factually specific as to how the prisoner's hepatis C medication had been wrongfully terminated by prison officials for a period of approximately 18 months, the complaint (according to the district court) failed to allege facts plausibly suggesting that the termination caused the prisoner "substantial harm."  127 S. Ct. at 2199.  The Supreme Court vacated and remanded the case because (1) under Fed. R. Civ. P. 8 and *Bell Atlantic*, all that is required is "a short and plain statement of the claim" sufficient to "give the defendant fair notice" of the claim and "the grounds upon which it rests," and (2) the plaintiff had alleged that the termination of his hepatitis C medication for 18 months was "endangering [his] life" and that he was still in need of treatment for [the] disease." *Id*. at 2200. While *Erickson* does not elaborate much further on its rationale, a careful reading of the decision (and the dissent by Justice Thomas) reveals a point that is perhaps so obvious that it did not need mentioning in the short decision: a claim of deliberate indifference to a serious medical need under the Eighth Amendment involves two elements, i.e., the existence of a sufficiently serious medical need possessed by the plaintiff, and the existence of a deliberately indifferent mental state possessed by prison officials with regard to that sufficiently serious medical need.  The *Erickson* decision had to do with only the first element, not the second element.  *Id*. at 2199-2200.  In particular, the decision was merely recognizing that an allegation by a plaintiff that, during the relevant time period, he suffered from hepatis C is, in and of itself, a factual allegation plausibly suggesting that he possessed a sufficiently serious medical need; the plaintiff need not *also* allege that he suffered an independent and "substantial injury" as a result of the termination of his hepatis C medication.  *Id*.  This point of law is hardly a novel one.  For example, numerous decisions, from district courts within the Second Circuit alone, have found that suffering from hepatitis C constitutes having a serious medical need for purposes of the Eighth Amendment. *See, e.g., Rose v. Alvees*, 01-CV-0648, 2004 WL 2026481, at *6 (W.D.N.Y. Sept. 9, 2004); *Verley v. Goord*, 02-CV-1182, 2004 WL 526740, at *10 n.11 (S.D.N.Y. Jan. 23, 2004); *Johnson v. Wright*, 234 F. Supp.2d 352, 360 (S.D.N.Y. 2002); *McKenna v. Wright*, 01-CV-6571, 2002 WL 338375, at *6 (S.D.N.Y. March 4, 2002); *Carbonell v. Goord*, 99-CV-3208, 2000 WL 760751, at *9 (S.D.N.Y. June 13, 2000).

complaint as true and construe all reasonable inferences in the plaintiff's favor."[20]  "This standard is applied with even greater force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se*."[21]  In other words,  while all pleadings are to be construed liberally under Rule 8(e), *pro se* civil rights pleadings are to be construed with an *extra* degree of liberality.

For example, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint.[22]  Moreover, "courts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that

---

[20]      *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (affirming grant of motion to dismiss) [citation omitted]; *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994).

[21]      *Hernandez*, 18 F.3d at 136 [citation omitted]; *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003) [citations omitted]; *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 619 (2d Cir. 1999) [citation omitted].

[22]      "Generally, a court may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss.  However, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum."  *Gadson v. Goord,* 96-CV-7544, 1997 WL 714878, at *1, n. 2 (S.D.N.Y. Nov. 17, 1997) (citing, *inter alia*, *Gil v. Mooney*, 824 F.2d 192, 195 [2d Cir. 1987] [considering plaintiff's response affidavit on motion to dismiss]).  Stated another way, "in cases where a pro se plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside the complaint to the extent they 'are consistent with the allegations in the complaint.'"  *Donhauser v. Goord*, 314 F. Supp.2d 119, 212 (N.D.N.Y. 2004) (considering factual allegations contained in plaintiff's opposition papers) [citations omitted], *vacated in part on other grounds*, 317 F. Supp.2d 160 (N.D.N.Y. 2004).  This authority is premised, not only on case law, but on Rule 15 of the Federal Rules of Civil Procedure, which permits a plaintiff, as a matter of right, to amend his complaint once at any time before the service of a responsive pleading–which a motion to dismiss is not.  *See Washington v. James*, 782 F.2d 1134, 1138-39 (2d Cir. 1986) (considering subsequent affidavit as amending *pro se* complaint, on motion to dismiss) [citations omitted].

15

they suggest."[23]  Furthermore, when addressing a *pro se* complaint, *generally* a district court

"should not dismiss without granting leave to amend at least once when a liberal reading of the

complaint gives any indication that a valid claim might be stated."[24]  Of course, an opportunity to

amend is not required where the plaintiff has already amended his complaint.[25]  In addition, an

opportunity to amend is not required where "the problem with [plaintiff's] causes of action is

substantive" such that "[b]etter pleading will not cure it."[26]

---

[23]     *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (finding that plaintiff's
conclusory allegations of a due process violation were insufficient) [internal quotation and
citation omitted].

[24]     *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) [internal quotation and
citation omitted]; *see also* Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when
justice so requires").

[25]     *Yang v. New York City Trans. Auth.*, 01-CV-3933, 2002 WL 31399119, at *2
(E.D.N.Y. Oct. 24, 2002) (denying leave to amend where plaintiff had already amended
complaint once); *Advanced Marine Tech. v. Burnham Sec ., Inc.*, 16 F.Supp. 2d 375, 384
(S.D.N.Y.1998) (denying leave to amend where plaintiff had already amended complaint once).

[26]     *Cuoco*, 222 F.3d at 112 (finding that repleading would be futile) [citation
omitted]; *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of
course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint
should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice)
[citation omitted]; *see, e.g., See Rhodes v. Hoy*, 05-CV-0836, 2007 WL 1343649, at *3, 7
(N.D.N.Y. May 5, 2007) (Scullin, J., adopting Report-Recommendation of Peebles, M.J.)
(denying *pro se* plaintiff opportunity to amend before dismissing his complaint because the error
in his complaint–the fact that plaintiff enjoyed no constitutional right of access to DOCS'
established grievance process–was substantive and not formal in nature, rendering repleading
futile); *Thabault v. Sorrell*, 07-CV-0166, 2008 WL 3582743, at *2 (D. Vt. Aug. 13, 2008)
(denying *pro se* plaintiff opportunity to amend before dismissing his complaint because the errors
in his complaint–lack of subject-matter jurisdiction and lack of standing–were substantive and
not formal in nature, rendering repleading futile); *Hylton v. All Island Cob
Co.*, 05-CV-2355, 2005 WL 1541049, at *2 (E.D.N.Y. June 29, 2005) (denying *pro se* plaintiff
opportunity to amend before dismissing his complaint arising under 42 U.S.C. § 1983 because
the errors in his complaint–which included the fact that plaintiff alleged no violation of either the
Constitution or laws of the United States, but only negligence–were substantive and not formal in
nature, rendering repleading futile); *Sundwall v. Leuba*, 00-CV-1309, 2001 WL 58834, at *11 (D.

However, while this special leniency may somewhat loosen the procedural rules governing the form of pleadings (as the Second Circuit very recently observed),[27] it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Rules 8, 10 and 12.[28]  Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Rules 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow.[29]  Stated more plainly, when a plaintiff is proceeding *pro se*,

Conn. Jan. 23, 2001) (denying *pro se* plaintiff opportunity to amend before dismissing his complaint arising under 42 U.S.C. § 1983 because the error in his complaint–the fact that the defendants were protected from liability by Eleventh Amendment immunity–was substantive and not formal in nature, rendering repleading futile).

[27]      *Sealed Plaintiff v. Sealed Defendant # 1*, No. 06-1590, 2008 WL 3294864, at *5 (2d Cir. Aug. 12, 2008) ("[The obligation to construe the pleadings of *pro se* litigants liberally] entails, at the very least, a permissive application of the rules governing the form of pleadings.") [internal quotation marks and citation omitted]; *see also Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) ("[R]easonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training . . . should not be impaired by harsh application of technical rules.") [citation omitted].

[28]      *See Prezzi v. Schelter*, 469 F.2d 691, 692 (2d Cir.1972) (extra liberal pleading standard set forth in *Haines v. Kerner*, 404 U.S. 519 [1972], did not save *pro se* complaint from dismissal for failing to comply with Fed. R. Civ. P. 8]); *accord*, *Shoemaker v. State of Cal.*, 101 F.3d 108 (2d Cir. 1996) (citing *Prezzi v. Schelter*, 469 F.2d 691) [unpublished disposition cited only to acknowledge the continued precedential effect of *Prezzi v. Schelter*, 469 F.2d 691, within the Second Circuit]; *accord*, *Praseuth v. Werbe*, 99 F.3d 402 (2d Cir.1995).

[29]      *See McNeil v. U.S.,* 508 U.S. 106, 113 (1993) ("While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed . . .  we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Faretta v. California*, 422 U.S. 806, 834, n.46 (1975) ("The right of self-representation is not a license . . . not to comply with relevant rules of procedural and substantive law."); *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *cf. Phillips v. Girdich*, 408 F.3d 124, 128, 130 (2d Cir. 2005) (acknowledging that *pro se* plaintiff's complaint could be dismissed for failing to comply

"all normal rules of pleading are not absolutely suspended."[30]

## III.   ANALYSIS

### A.   Claims Against Defendants in Their Official Capacities

Defendants argue that any claims against them in their official capacities are barred by the

Eleventh Amendment.   (Dkt. No. 71-17 at 3-5.)  Plaintiff concedes that Defendants are correct.

(Dkt. No. 72 at 27[31].)

The Eleventh Amendment has long been construed as barring a citizen from bringing a

suit against his or her own state in federal court, under the fundamental principle of "sovereign

immunity."  *See* U.S. Const. amend XI ("The Judicial power of the United States shall not be

construed to extend to any suit in law or equity, commenced or prosecuted against one of the

United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.");

*Hans v. Louisiana*, 134 U.S. 1, 10-21 (1890); *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S.

261, 267 (1997); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). State

immunity extends not only to the states, but to state agencies and to state officers who act on

behalf of the state.  *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf*, 506 U.S. 139, 142-47

(1993); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-06 (1984).

The Eleventh Amendment bars suits against state officials acting in their official

---

with Rules 8 and 10 if his mistakes either "undermine the purpose of notice pleading []or
prejudice the adverse party").

[30]      *Stinson v. Sheriff's Dep't of Sullivan Cty.*, 499 F. Supp. 259, 262 & n.9 (S.D.N.Y.
1980).

[31]      Page numbers for Plaintiff's brief refer to the page numbers generated by the ECF
system rather than Plaintiff's handwritten page numbers.

18

capacities.[32]  Where it has been successfully demonstrated that a defendant is entitled to

sovereign immunity under the Eleventh Amendment, the federal court lacks subject matter

jurisdiction over the case, and "the case must be stricken from the docket."  *McGinty v. State of*

*New York*, 251 F.3d 84, 100 (2d Cir. 2001) (citation omitted); *see also* Fed. R. Civ. P. 12(h)(3).

Here, each of the represented Defendants has an official position with DOCS.  Therefore,

any claims against these Defendants in their officials capacities are barred by the Eleventh

Amendment.  Accordingly, I recommend that the Court grant Defendants' motion for summary

judgment dismissing these claims.

### B.    Pendent State Law Claims

Defendants argue that Plaintiff's state law claims are barred by New York State

Correction Law section 24.  (Dkt. No. 71-17 at 5-6.)  Plaintiff concedes that Defendants are

correct.  (Dkt. No. 72 at 27.)

---

[32]    *See Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir. 1993) ("The
immunity to which a state's official may be entitled in a § 1983 action depends initially on the
capacity in which he is sued.  To the extent that a state official is sued for damages in his official
capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke
the Eleventh Amendment immunity belonging to the state."); *Severino v. Negron*, 996 F.2d 1439,
1441 (2d Cir. 1993) ("[I]t is clear that the Eleventh Amendment does not permit suit [under
Section 1983] for money damages against state officials in their official capacities."); *Farid v.
Smith*, 850 F.2d 917, 921 (2d Cir. 1988) ("The eleventh amendment bars recovery against an
employee who is sued in his official capacity, but does not protect him from personal liability if
he is sued in his 'individual' or 'personal' capacity."); *see also Will v. Michigan Dept. of State
Police*, 491 U.S. 58, 71 (1989) ("Obviously, state officials literally are persons.  But a suit against
a state official in his or her official capacity is not a suit against the official but rather is a suit
against the official's office. . . .  As such, it is no different from a suit against the State itself. . . .
We hold that neither a State nor its officials acting in their official capacities are 'persons' under §
1983."); *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("As long as the government entity
receives notice and an opportunity to respond, an official-capacity suit is, in all respects other
than name, to be treated as a suit against the entity.  It is not a suit against the official personally,
for the real party in interest is the entity."); *see also Holloway v. Selsky*, 05-CV-0501, 2007 WL
433375, at *4 (N.D.N.Y. Feb. 6, 2007) (Sharpe, J.) [citing cases].

New York Correction Law section 24 provides that:

> No civil action shall be brought in any court of the state, except by the attorney general on behalf of the state, against any officer or employee of [DOCS], in his personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee.

N.Y. Correct. Law § 24 (McKinney 2003).

A claim that a correctional officer has committed excessive force or medical malpractice is a claim "arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties" of the officer. *Ierardi v. Sisco*, 119 F.3d 183, 186-88 (2d Cir. 1997); *Ruffin v. Deperio*, 97 F. Supp. 2d 346, 355-56 (W.D.N.Y. 2000).

Although New York Correction Law section 24 explicitly bars only cases filed in state court, it is equally applicable to state law claims filed in federal court because "[i]f a state would not recognize a plaintiff's right to bring a state claim in state court, a federal court exercising pendent jurisdiction, standing in the shoes of a state court, must follow the state's jurisdictional determination and not allow that claim to be appended to a federal law claim in federal court." *Baker v. Coughlin*, 77 F.3d 12, 15 (2d Cir. 1996)(*quoting Promisel v. First American Artificial Flowers, Inc.*, 943 F.2d 251, 257 (2d Cir. 1991)).

Here, the complaint alleges that the represented defendants, who are all DOCS employees, committed the state law torts of assault, battery, and negligence.  (Dkt. No. 1 at ¶ 1.)  As the recitation of facts in Plaintiff's complaint reveals, these Defendants "were endeavoring to do their job - perhaps poorly - at the time of the charged transgressions."  *Ierardi*, 119 F.3d at 188.  The complaint thus brings state law claims against DOCS officers and employees in their

personal capacities for damages "arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee." Accordingly, Plaintiff's state law claims are barred by New York Correction Law section 24 and I recommend that Defendants' motion for summary judgment dismissing these claims be granted.

### C.     Medical Care

Plaintiff argues that Defendants Ryan, Riley, and Perrea violated his Eighth Amendment right to adequate medical care.

The evidence before the Court regarding Plaintiff's medical care shows that Plaintiff's first contact with medical staff after he was beaten was at about 7:00 p.m. on February 4, 2003. Defendant Ryan declares that she observed security staff escorting Plaintiff from the lower holding pen to his cell and that Plaintiff had good movement of all extremities, was alert and oriented, and his speech was clear. (Dkt. No. 71-2, Ryan Decl. ¶¶ 5-6.) Plaintiff declares that he was limping and in pain, did not have good movement of all extremities, and was not completely alert or oriented. (Dkt. No. 72 at 18, Dallio Decl. ¶ 9.) Defendant Ryan declares that, upon his arrival at his cell, Plaintiff was moving with no difficulty. (Dkt. No. 71-2, Ryan Decl. ¶ 7.) Plaintiff declares that he was not moving without difficulty, that he was "still limping and in pain," and that "he was without complete feeling" in his hands and fingers. (Dkt. No. 72 at 18, Dallio Decl. ¶ 10.) Defendant Ryan declares that she saw Plaintiff in his cell stripped to the waist and she did not observe any open wounds or lacerations or any swelling on Plaintiff's face or upper torso. (Dkt. No. 71-2, Ryan Decl. ¶ 8.) She noted a small superficial scrape approximately 1/2 centimeter long on the back of Plaintiff's upper right arm and a quarter-sized

reddened area on his left shoulder.  *Id.*  Plaintiff declares that Defendant Ryan "observed several open areas and lacerations which she failed to document in her reports."  (Dkt. No. 72 at 18, Dallio Decl. ¶ 11.)

Defendant Ryan declares that about an hour and half later, she reported to Plaintiff's cell because he was yelling that he needed an emergency sick call.  (Dkt. No. 71-2, Ryan Dec. ¶¶ 10-11.)  Plaintiff reported that he could not move his hands.  (Dkt. No. 71-2, Ryan Decl. ¶ 11.)  Defendant Ryan observed that Plaintiff was able to move both hands and all fingers upon request and that Plaintiff had no reddened areas or areas of swelling on either hand or any fingers.  (Dkt. No. 71-2, Ryan Decl. ¶ 12.)  Plaintiff declares that Defendant Ryan failed to document "the injury that was significantly visible to my kidney area, ... the injuries to my left and right eye areas which resulted in black eyes, ... my head injuries, ... the laceration to my left and right wrists, and lacerations to my right knee."  (Dkt. No. 72 at 18, Dallio Decl. ¶ 6.)  Plaintiff further declares that he was not able to fully move his hands and fingers upon request.  (Dkt. No. 72 at 18, Dallio Decl. ¶ 13.)

On February 5, 2003, Defendant Perrea saw Plaintiff during sick call rounds.  (Dkt. No. 71-4, Perrea Decl. ¶ 6.)  Plaintiff requested emergency care.  (Dkt. No. 71-4, Perrea Decl. ¶ 7.)  Defendant Perrea noted that Plaintiff was having no difficulty with respiration and that his skin color was good.  (Dkt. No. 71-4, Perrea Decl. ¶ 8.)  Based on her observations, she concluded that no medical treatment was needed.  (Dkt. No. 71-4, Perrea Decl. ¶ 9.)

On February 7, 2003, Defendant Perrea saw Plaintiff during sick call rounds. (Dkt. No. 71-4, Perrea Decl. ¶ 10.)  Plaintiff complained that he had numerous injuries that needed to be looked at and that he had not been examined after the excessive force incident.  Defendant Perrea

22

advised Plaintiff that he had been seen twice by medical staff on the evening of the incident.

(Dkt. No. 71-4, Perrea Decl. ¶ 11.)  She observed that Plaintiff was alert and oriented as to

person, place, and time, that his speech was clear, that he was moving all extremities, and that he

was ambulating in his cell with no difficulty.  (Dkt. No. 71-4, Perrea Decl. ¶ 12.)  Defendant

Perrea provided Plaintiff with six tablets of Ibuprofen and noted in his chart that he should be

monitored.  (Dkt. No. 71-4, Perrea Decl. ¶ 13.)

About six and a half hours later, Defendant Perrea had Plaintiff brought to a holding pen

for a more detailed visual examination. (Dkt. No. 71-4, Perrea Decl. ¶ 14.)  Defendant Perrea

observed that Plaintiff ambulated to the holding pen with no difficulty, that Plaintiff was moving

his extremities and breathing with no difficulty, that Plaintiff was alert and oriented to person,

place, and time, and that Plaintiff's speech was clear.  (Dkt. No. 71-4, Perrea Decl. ¶ 17.)  On

examination, Defendant Perrea noted slight redness and minimal swelling around Plaintiff's left

eye.  There was a superficial scrape on Plaintiff's right shoulder.  There were superficial scrapes

and bruises on Plaintiff's wrists, but no open wounds.  There was a superficial scratch on

Plaintiff's right upper elbow.  There were two small bruises on Plaintiff's right outer knee, but no

open wounds.  (Dkt. No. 71-4, Perrea Decl. ¶ 18.)  Plaintiff complained of a lump to the right

side of his head near his ear, but Defendant Perrea noted the same lump near Plaintiff's left ear

and concluded that the lump was a normal bony development.  Plaintiff's left side had moderate

bruising but no open wounds. (Dkt. No. 71-4, Perrea Decl. ¶ 19.)  Defendant Perrea determined

that no medical treatment was needed.  (Dkt. No. 71-4, Perrea Decl. ¶ 20.)

Plaintiff declares that during her two examinations of him on February 7, 2003,

Defendant Perrea failed to note his two "obvious black eyes" and the fact that his "skin color was

not good." He further declares that the bumps on his head "were not normal bony development, those lumps were from the misuse of force." (Dkt. No. 72 at 20, Dallio Decl. ¶ 20.)

A paralegal from Prisoners Legal Services took photographs of Plaintiff on February 7, 2003. Plaintiff has included copies of those photographs in his opposition papers. (Dkt. No. 72-2.) Plaintiff declares that the photographs show that what Defendant Perrea characterized as "redness" to his left eye was instead "obvious black and blue bruising," that what "Defendant Perrea documented as moderate size bruising to left flank is really an injury to my left kidney," that what Defendant Perrea noted as superficial scratches to Plaintiff's right arm were in fact "a large area ... with blue bruises along with some lacerations that were healing," and that what Defendant Perrea characterized as two small bruises on the knee were in fact "multiple bruises and red spots ... along with some open lacerations that were healing." (Dkt. No. 72 at 20, Dallio Decl. ¶ 21.) Unfortunately, the copies of the photos provided by Plaintiff are extremely unclear and I can neither confirm nor contradict Plaintiff's characterization of what the photos illustrate.

Defendant Riley declares that on February 18, 2003, she saw Plaintiff during sick call rounds. Plaintiff complained of body aches and showed Defendant Riley some scars. (Dkt. No. 71-3, Riley Decl. ¶¶ 6-7, 9.) Plaintiff declares that he also complained of numbness and loss of sensation in his fingers. (Dkt. No. 72 at 21, Dallio Decl. ¶ 27.) Defendant Riley declares that she noted no open wounds, inflammation, or signs or symptoms of infection. She thus determined that no medical treatment was necessary for the scars. (Dkt. No. 71-3, Riley Decl. ¶ 10.)

On February 22, 2003, Defendant Riley saw Plaintiff during sick call rounds. Plaintiff complained of a headache. (Dkt. No. 71-3, Riley Decl. ¶ 13-14.) Defendant Riley observed that Plaintiff was alert, oriented, and ambulating without difficulty. (Dkt. No. 71-3, Riley Decl. ¶ 15.)

24

She offered Plaintiff ibuprofen, which he refused.  ( Dkt. No. 71-3, Riley Decl. ¶ 16.)

On March 9, 2003, Defendant Riley saw Plaintiff during sick call rounds.  (Dkt. No. 71-3, Riley Decl. ¶ 18.)  Plaintiff complained of numbness in his left hand around his thumb area. (Dkt. No. 71-3, Riley Decl. ¶ 19.)

On March 10, 2003, Defendant Perrea saw Plaintiff during sick call rounds.  (Dkt. no. 71-4, Perrea Decl. ¶ 21.)  Plaintiff said that he wanted to see a doctor for treatment of nerve damage and numbness from the February 4, 2003, incident.  (Dkt. No. 71-4, Perrea Decl. ¶ 22.) Defendant Perrea noted that Plaintiff had full range of motion, that he was ambulating with no difficulty, and that his speech was very clear.  (Dkt. No. 71-4, Perrea Decl. ¶ 23.)  Defendant Perrea noted in Plaintiff's chart that he should be seen by a nurse practitioner on March 14, but that the nurse practitioner should see Plaintiff only through his cell door due to Plaintiff's behavior.  (Dkt. No. 71-4, Perrea Decl. ¶ 24.)

To prevail on an Eighth Amendment claim of inadequate medical care, a plaintiff must show two things: (1) that he or she had a *sufficiently serious* medical need; and (2) that the defendant was *deliberately indifferent* to that serious medical need.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).  Defendants argue that there is no genuine issue of material fact showing that Plaintiff suffered from a sufficiently serious medical need and that, even if Plaintiff did suffer from such a need, Defendants were not deliberately indifferent to that need.  (Dkt. No. 71-17 at 7-15.)  Defendants are correct.

1.    Serious Medical Need

Defendants argue that the evidence establishes that Plaintiff had no serious medical need. (Dkt. No. 71-17 at 13-15.)  Defendants are correct.

25

To be sufficiently serious for purposes of the Constitution, a medical condition must be "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J. dissenting) [citations omitted], *accord, Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1996), *cert. denied*, 513 U.S. 1154 (1995); *Chance*, 143 F.3d at 702.

Here, the evidence shows that Plaintiff did not suffer from a serious medical need. Crediting Plaintiff's version of his injuries, the evidence shows that he suffered two black eyes, bruising in his kidney area on his left side, kick marks and open lacerations on his knees, bruising and red spots on his thigh, lacerations on his arms and wrists, a headache, and numbness in his hands and fingers.  (Dkt. No. 72 at 29.)  None of these are conditions of urgency that may produce death, degeneration, or extreme pain.  Although Plaintiff characterizes the bruise to his kidney area as evidence of internal bleeding (Dkt. No. 72 at 29), there is no evidence before the Court that Plaintiff was, in fact, internally bleeding.  Significantly, Plaintiff does not allege any permanent injury as a result of this alleged internal bleeding.  As to the other injuries, District Courts in the Second Circuit have consistently held that similar conditions are not sufficiently serious to support Eighth Amendment liability.  *See Dzwonczyk v. Syracuse City Police Department*, No. 5:08-CV-0557, 2008 WL 5459147, at * 13 (N.D.N.Y. Dec. 22, 2008) (bruised rib not sufficiently serious); *Stephanski v. Arnone*, No. 04-CV-552A, 2008 WL 413301, at * 10 (W.D.N.Y. Feb. 13, 2008) (bruises and pain not sufficiently serious); *Jones v. Furman*, No. 02-CV-939F, 2007 WL 894218, at *10 (W.D.N.Y. Mar. 21, 2007) (soreness, pain and a lump behind right ear, lump on back of head, small abrasions to nose and knuckle, and bruising to back, ribs, and legs not sufficiently serious); *Ruffino v. Gomez*, No. 3:05-CV-1209, 2006 WL

3248570, at * 7 (D. Conn. Nov. 8, 2006) (bruises, scrapes, and scratches not sufficiently serious); *Qader v. New York*, 396 F. Supp. 2d 466, 470 (S.D.N.Y. 2005) (dizziness and "terrible headache" not sufficiently serious); *Rodriguez v. Mercado,* No. 00-CIV-8588, 2002 WL 1997885, at *8 (S.D.N.Y. Aug. 28, 2002) (bruises to head, back, and wrists sustained during excessive force incident not sufficiently serious); *Gill v. Jones*, No. 95-CV-9031, 2001 WL 1346012, at * 7 (S.D.N.Y. Nov. 1, 2001) ("headaches, earaches, and dizziness [experienced] intermittently for a maximum of four days" in conjunction with "facial bruising" not sufficient serious).  *But see Douglas v. Smith*, No. 9:05-CV-1000, 2008 WL 434605, at *7 (N.D.N.Y. Feb. 14, 2008) (lacerations, bruises, swelling, and temporary hearing loss when considered in combination "may" be sufficiently serious); *Linden v. Westchester County*, No. 93 Civ. 8373, 1995 WL 686742, at *3 (S.D.N.Y. Nov. 20, 1995) (cuts, bruises, and pain sustained in excessive force incident sufficiently serious)[33].

Accordingly, Plaintiff has not raised a genuine issue of material fact that Defendants Ryan, Riley, and Perrea violated his Eighth Amendment right to adequate medical care.  I therefore recommend that Defendants' motion for summary judgment of this claim be granted and that all claims against these defendants be dismissed.

2.    Deliberate Indifference

Even if one assumes that Plaintiff had raised a genuine issue of material fact that his injuries were sufficiently serious to establish the first prong of an Eighth Amendment medical care claim, the evidence does not raise a genuine issue of material fact that Defendants Ryan,

---

[33]    The undersigned will provide a copy of these unpublished decisions to Plaintiff in light of the Second Circuit's recent decision in *Lebron v. Sanders*, __ F.3d __, 2009 WL 399215 (2d Cir. Feb. 19, 2009).

Riley, and Perrea were deliberately indifferent to that need.

Medical mistreatment rises to the level of deliberate indifference only when it "involves culpable recklessness, i.e., an act or a failure to act . . . that evinces 'a conscious disregard of a substantial risk of serious harm.'" *Chance*, 143 F.3d, 698, 703 (quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)). Thus, to establish deliberate indifference, an inmate must prove that (i) a prison medical care provider was aware of facts from which the inference could be drawn that the inmate had a serious medical need, and (ii) that the medical-care provider actually drew that inference. *Farmer*, 511 U.S. at 837; *Chance*, 143 F.3d at 702-703. The inmate then must establish that the provider consciously and intentionally disregarded or ignored that serious medical need. *Farmer*, 511 U.S. 825, 835; *Ross v. Giambruno*, 112 F.3d 505 (2d Cir. 1997). An "inadvertent failure to provide adequate medical care" does not constitute "deliberate indifference." *Estelle*, 429 U.S. at 105-06. Moreover, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim . . . under the Eighth Amendment." *Id.* Stated another way, "medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id.; Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) ("Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation.").

Here, the evidence shows that Defendants Ryan, Riley, and Perrea responded to Plaintiff's requests for medical attention, examined him, and provided medication for his pain. This is insufficient to raise a genuine issue of material fact that these defendants were deliberately indifferent. Therefore, even if Plaintiff had raised a genuine issue of material fact

28

that his condition was sufficiently serious, I would recommend granting this portion of

Defendants' motion for summary judgment and dismissing all claims against Defendants Ryan,

Riley, and Perrea.

### D.    Personal Involvement

Defendants Wright, Racette, Donelli, and Iozetti argue that they are entitled to summary

judgment because they were not "in any way personally involved in the incident that is the

subject of this lawsuit.  In fact, [P]laintiff does not assert otherwise.  Rather, [P]laintiff asserts

that [these] defendants ... were assigned to investigate [P]laintiff's complaint of excessive force

and 'participated in cover-up in their response to the dishonest investigation.'"  (Dkt. No. 71-17

at 16.)  However, Plaintiff does in fact allege that these Defendants were personally involved in

violating his constitutional rights by conducting a dishonest investigation of the underlying

incident.

"'[P]ersonal involvement of defendants in alleged constitutional deprivations is a

prerequisite to an award of damages under § 1983.'"  *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir.

1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 [2d Cir. 1991]).[34]  In order to

prevail on a cause of action under 42 U.S.C. § 1983 against an individual, a plaintiff must show

some tangible connection between the alleged unlawful conduct and the defendant.[35]

Supervisory personnel such as Lt. Wright, Capt. Racette, Deputy Superintendent Donelli, and

Investigator Iozetti may be considered "personally involved" only if they (1) directly participated

---

[34]      *Accord*, *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977), *cert. denied*, 434 U.S. 1087 (1978); *Gill v. Mooney*, 824 F2d 192, 196 (2d Cir. 1987).

[35]      *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

in the constitutional violation, (2) failed to remedy that violation after learning of it through a

report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation

occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or

(5) exhibited deliberate indifference to the rights of inmates by failing to act on information

indicating that the violation was occurring.[36]

> [W]here a supervisory official receives and acts on a prisoner's
> grievance (or substantively reviews and responds to some other form
> of inmate complaint), personal involvement will be found under the
> second Colon prong: "the defendant, after being informed of the
> violation through a report or appeal, failed to remedy the wrong."
> *Colon v. Coughlin*, 58 F.3d at 873; *see, e.g., Ramos v. Artuz*, 2001
> WL 840131 at *8-10 (no personal involvement by Supt. who
> forwarded letters to others to respond, but personal involvement
> found for prison Health Services Administrator Zwillinger whose
> "involvement extends beyond the mere receipt of letters. Zwillinger
> sent plaintiff numerous letters containing some explanation or
> justification concerning the issues raised by plaintiff in his letter to
> defendant [Supt.] Artuz."); *Booker v. Strack*, 97 Civ. 2418, 1999 WL
> 983878 at *5-6 (S.D.N.Y. Oct. 29, 1999) (grievances sent to
> Superintendent may show personal involvement); *James v. Artuz*, 93
> Civ.2056, 1994 WL 174005 at *7 (S.D.N.Y.May4, 1994) (personal
> involvement where Supt. Artuz "conducted a de novo review" of
> prison disciplinary hearing); *Van Pelt v. Finn*, 92 Civ. 2977, 1993
> WL 465297 at *6 (S.D.N.Y. Nov. 12, 1993) (Superintendent found
> to have personal involvement where he reviewed plaintiff's
> grievances and also plaintiff wrote to Superintendent about correction
> officer's alleged threats, yet Superintendent "consistently denied
> plaintiff's subsequent complaints of retaliation.").

*Walker v. Pataro,* No. 99-CIV-4607, 2002 WL 664040, at *13 (S.D.N.Y. Apr. 23, 2002)

The authority relied on by Defendants is distinguishable. Defendants cite *Nieves v.*

---

[36]     *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (adding fifth prong); *Wright*,
21 F.3d at 501 (adding fifth prong); *Williams v. Smith*, 781 F.2d 319, 323-324 (2d Cir. 1986)
(setting forth four prongs).

*Gonzalez*, No. 05-CV-17S, 2006 WL 758615 (W.D.N.Y. Mar. 2, 2006) for the proposition that there is no constitutional right to an investigation by government officials.  In that case, an inmate alleged that he sent a complaint regarding prison conditions to a police officer, who "signed for [the] letter ... and then returned the letter to sender without investigating the allegations contained within the letter."  *Nieves*, 2006 WL 758615, at * 1-2.  The court found that the prisoner had no constitutional right to an investigation and granted the police officer's motion for summary judgment.  The reason that the case currently before the Court is distinguishable from *Nieves* is illustrated by *Lewis v. Gallivan*, 315 F. Supp. 2d 313 (W.D.N.Y. 2004), which is quoted in the section of *Nieves* relied upon by Defendants.

In *Lewis*, an inmate alleged that a county sheriff, a county District Attorney, and a county violated his constitutional rights by failing to prosecute two correctional officers who had threatened him.  The court dismissed the complaint with prejudice on initial review, noting that (1) courts do not recognize claims of "inadequate investigation as sufficient to state a civil rights claim *unless there [i]s another recognized constitutional right involved*;" and (2) because "these defendants are not in supervisory positions within the prison hierarchy, [they] do not have a duty to protect plaintiff under the Eighth Amendment, which requires prison officials to take reasonable measures to guarantee the safety of inmates in their custody."  *Lewis*, 315 F. Supp. 2d at 317 (emphasis added).  The *Lewis* court thus recognized that, as discussed above,  a prisoner who claims that defendants in supervisory positions within the prison hierarchy failed to investigate a danger to the plaintiff's safety may, indeed, state a civil rights claim.

Here, Defendants Wright, Racette, Donelli, and Iozetti, who are in supervisory positions in the prison hierarchy, concede that they learned of the incident of excessive force involving

Plaintiff, investigated the complaint or reviewed the investigative report, and concluded that Plaintiff's grievance was without merit.   (Dkt. No. 71-16 at ¶¶ 51-62.)  This is sufficient to constitute personal involvement.  As to whether the incident constituted a constitutional violation, Defendants have conceded, by failing to move for summary judgment of Plaintiff's Eighth Amendment excessive force claims, that there are genuine issues of material fact regarding whether Plaintiff was subjected to an unconstitutional use of force.  Therefore, I recommend that Defendants' motion for summary judgment of the claims against Defendants Wright, Racette, Donelli, and Iozetti in their personal capacities be denied and the claims proceed to trial.

### E.    Qualified Immunity

Defendants Ryan, Riley, Perrea, Wright, Racette, Donelli, and Iozetti argue that they are entitled to qualified immunity.  (Dkt. No. 71-17 at 18-20.)  As to Defendants Ryan, Riley, and Perrea, I decline to address this argument because, as discussed above, these Defendants are entitled to summary judgment on the ground that Plaintiff has not raised a genuine issue of material fact that they violated his Eighth Amendment right to adequate medical care.  As to Defendants Wright, Racette, Donelli, and Iozetti, I find that they are not entitled to qualified immunity.

"Once qualified immunity is pleaded, plaintiff's complaint will be dismissed unless defendant's alleged conduct, when committed, violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Williams v. Smith*, 781 F.2d 319, 322 (2d Cir. 1986) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 815 [1982]).  As a result, a qualified immunity inquiry in a prisoner civil rights case generally involves two issues:

(1) "whether the facts, viewed in the light most favorable to the plaintiff, establish a constitutional violation"; and (2) "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted." *Sira v. Morton*, 380 F.3d 57, 68-69 (2d Cir. 2004) [citations omitted], *accord*, *Higazy v. Templeton*, 505 F.3d 161, 169, n.8 (2d Cir. 2007) [citations omitted].  Courts may exercise their sound discretion in deciding which of the two prongs should be addressed first, in light of the circumstances in the particular case at hand. *Pearson v. Callahan*, 129 S.Ct. 808, 817 (2009).

In determining the second issue (i.e., whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted), courts in this circuit consider three factors:

> (1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.

*Jermosen v. Smith*, 945 F.2d 547, 550 (2d Cir. 1991) [citations omitted], *cert. denied*, 503 U.S. 962 (1992).[37]  "As the third part of the test provides, even where the law is 'clearly established' and the scope of an official's permissible conduct is 'clearly defined,' the qualified immunity defense also protects an official if it was 'objectively reasonable' for him at the time of the challenged action to believe his acts were lawful." *Higazy v. Templeton*, 505 F.3d 161, 169-70

---

[37]     *See also Pena v. DePrisco*, 432 F.3d 98, 115 (2d Cir. 2005); *Clue v. Johnson*, 179 F.3d 57, 61 (2d Cir. 1999); *McEvoy v. Spencer,* 124 F.3d 92, 97 (2d Cir. 1997); *Shechter v. Comptroller of City of New York,* 79 F.3d 265, 271 (2d Cir. 1996); *Rodriguez v. Phillips*, 66 F.3d 470, 476 (2d Cir. 1995); *Prue v. City of Syracuse*, 26 F.3d 14, 17-18 (2d Cir. 1994); *Calhoun v. New York State Division of Parole*, 999 F.2d 647, 654 (2d Cir. 1993).

(2d Cir. 2007) [citations omitted].[38]  This "objective reasonableness" part of the test is met if

"officers of reasonable competence could disagree on [the legality of defendant's actions]."

*Malley v. Briggs*, 475 U.S. 335, 341 (1986).[39]

As discussed above at Part III(D), Second Circuit precedent clearly establishes that

supervisory defendants who learn of and fail to correct a constitutional violation can be held

liable.  Viewing the facts in the light most favorable to Plaintiff, officers of reasonable

competence would agree that falsifying an investigation is not legal.  Therefore, Defendants

Wright, Racette, Donelli, and Iozetti are not entitled to qualified immunity.

## F.     Failure to Serve Defendant Darcy Curnell

Plaintiff names District Attorney investigator Darcy Curnell as a defendant.  (Dkt. No. 1

at ¶ 9.)  Although an April 25, 2006, letter to the Court from defense counsel (Dkt. No. 25) states

that Defendant Curnell had been served, the docket indicates that the United States Marshals

Service was unable to locate her for service of process.  (Dkt. No. 26.)  Defense counsel has

indicated that his office does not represent Defendant Curnell.  (Dkt. No. 71-17 at 1, n. 2.)

Under the Federal Rules of Civil Procedure, a defendant must be served with the

---

[38]     *See also Anderson v. Creighton*, 483 U.S. 635, 639 (1987) ("[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective reasonableness of the action.'") [citation omitted]; *Davis v. Scherer*, 468 U.S. 183, 190 (1984) ("Even defendants who violate [clearly established] constitutional rights enjoy a qualified immunity that protects them from liability for damages unless it is further demonstrated that their conduct was unreasonable under the applicable standard."); *Benitez v. Wolff*, 985 F.2d 662, 666 (2d Cir. 1993) (qualified immunity protects defendants "even where the rights were clearly established, if it was objectively reasonable for defendants to believe that their acts did not violate those rights").

[39]     *See also Malsh v. Correctional Officer Austin*, 901 F. Supp. 757, 764 (S.D.N.Y. 1995) [citing cases]; *Ramirez v. Holmes*, 921 F. Supp. 204, 211 (S.D.N.Y. 1996).

34

summons and complaint within ***120 days*** after the filing of the complaint.  Fed. R. Civ. P. 4(m).

This 120-day service period is shortened, or "expedited," by the Court's Local Rules of Practice

(and the Court's General Order 25), which provide that all defendants must be served with the

summons and complaint within ***sixty (60) days*** of the filing of the complaint.  N.D.N.Y. L.R.

4.1(b) [emphasis added].  Here, more than 120 days have elapsed since the filing of the

Complaint and Defendant Curnell has not been served.  As a result, Plaintiff is in violation of

both the Federal Rules of Civil Procedure and the Local Rules of Practice for this Court.  I

therefore recommend that all claims against Defendant Curnell be dismissed.

    **ACCORDINGLY**, it is

    **RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 71) be

**GRANTED IN PART AND DENIED IN PART**.  It is recommended that Plaintiff's claims

against all Defendants in their official capacities, Plaintiff's pendent state law claims, and

Plaintiff's claims against Defendants Ryan, Riley, and Perrea be dismissed.  It is recommended

that Plaintiff's actions against all other Defendants in their individual capacities proceed to trial;

and it is further

    **RECOMMENDED** that all claims against Defendant Darcy Curnell be dismissed

without prejudice pursuant to Federal Rule of Civil Procedure 4(m); and it is further

    **ORDERED** that the clerk serve copies of the unpublished cases cited on pages 26 and 27

of this Report -Recommendation on Plaintiff.

    **ANY OBJECTIONS to this Report-Recommendation must be filed with the Clerk**

**of this Court within TEN (10) WORKING DAYS, PLUS THREE (3) CALENDAR DAYS**

**from the date of this Report-Recommendation (unless the third calendar day is a legal**

holiday, in which case add a fourth calendar day).  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P.

72(b); N.D.N.Y. L.R. 72.1(c); Fed. R. Civ. P. 6(a)(2), (d).

       **BE ADVISED that the District Court, on *de novo* review, will ordinarily refuse to**

**consider arguments, case law and/or evidentiary material that could have been, but was**

**not, presented to the Magistrate Judge in the first instance.**[40]

       **BE ALSO ADVISED that the failure to file timely objections to this Report-**

**Recommendation will PRECLUDE LATER APPELLATE REVIEW of any Order of**

---

     [40]     *See, e.g., Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137-38 (2d Cir. 1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters,* 894 F.2d 36, 40 n.3 (2d Cir. 1990) (district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate"); *Alexander v. Evans,* 88-CV-5309, 1993 WL 427409, at *18 n.8 (S.D.N.Y. Sept. 30, 1993) (declining to consider affidavit of expert witness that was not before magistrate) [citation omitted]; s*ee also Murr v. U.S.*, 200 F.3d 895, 902, n.1 (6th Cir. 2000) ("Petitioner's failure to raise this claim before the magistrate constitutes waiver."); *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendations are deemed waived.") [citations omitted]; *Cupit v. Whitley*, 28 F.3d 532, 535 (5th Cir. 1994) ("By waiting until after the magistrate judge had issued its findings and recommendations [to raise its procedural default argument] . . . Respondent has waived procedural default . . . objection[].") [citations omitted]; *Greenhow v. Sec'y of Health & Human Servs.*, 863 F.2d 633, 638-39 (9th Cir. 1988) ("[A]llowing parties to litigate fully their case before the magistrate and, if unsuccessful, to change their strategy and present a different theory to the district court would frustrate the purpose of the Magistrates Act."), *overruled on other grounds by U.S. v. Hardesty*, 977 F.2d 1347 (9th Cir. 1992); *Patterson-Leitch Co. Inc. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988) ("[A]n unsuccessful party is not entitled as of right to de novo review by the judge of an argument never seasonably raised before the magistrate.") [citation omitted].

**judgment that will be entered**.  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small*

*v. Sec'y of H.H.S.*, 892 F.2d 15 [2d Cir. 1989]).


Dated:  March 24, 2009
       Syracuse, New York

George H. Lowe
United States Magistrate Judge